IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| HARRY C. BROCKMEIER, JR., | : | Case No. 3:12-CV-327 |
| Plaintiff, | | District Judge Walter H. Rice |
| | : | Magistrate Judge Michael J. Newman |
| v. | | |
| GREATER DAYTON REGIONAL | : | |
| TRANSIT AUTHORITY, | | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATION[1]

---

This is an employment discrimination case properly and timely removed from the Montgomery County, Ohio Common Pleas Court. *See* doc 2; 28 U.S.C. §§ 1331, 1441(a). Plaintiff, Harry Brockmeier, Jr., a bus driver, claims his employer, Defendant Greater Dayton Regional Transit Authority ("GDRTA"), violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the corollary provision of Ohio law,[2] when GDRTA did not allow him to drive a bus for almost two years after it received a physician's report -- stating that he did not meet Department of Transportation ("DOT") medical certification guidelines for operation of a commercial vehicle due to symptoms associated with his multiple sclerosis ("MS").

This matter is now before the Court upon GDRTA's Fed. R. Civ. P. 12(b)(6) motion to dismiss (doc. 9), Plaintiff's opposition memorandum (doc. 12), and GDRTA's reply (doc. 14).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] In addition to his ADA claim, Plaintiff alleges that GDRTA violated Ohio's discrimination statute, Ohio Revised Code § 4112.02(A), by discriminating against him on the basis of his disability. Doc. 2 at PageID 25-26. Ohio's statute employs the same analysis as the ADA. *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 872 (6th Cir. 2007). Accordingly, the analysis in this Report and Recommendation, *infra*, applies both to Plaintiff's ADA and state law disability claim.

Having carefully reviewed Plaintiff's complaint (doc. 2) and both parties' memoranda, the Court recommends that this case be dismissed.[3]  This is an unusual ADA claim in that Plaintiff does not seek an accommodation or  challenge the reasonableness of the accommodation his employer offered him; rather, Plaintiff claims he should have been permitted to continue driving a bus, despite the fact that he failed a medical exam.  To that end, the Court notes that this a highly regulated area of the law -- likely on account of the significant safety concerns involved with public bus drivers and their transportation of citizens of the community.  *See Sw. Ohio Reg'l Transit Auth. v. Amalgamated Transit Union*, Local 627, 742 N.E. 2d 630, 635 (Ohio 2001) (recognizing "the duty of a common carrier of passengers is to exercise the highest degree of care for the safety of its passengers," and noting that Ohio adopted the federal DOT safety standards in light of this heightened duty of care).  The Court is also mindful that cases, whenever possible, should not be decided at the motion to dismiss stage. *See Antioch Litig. Trust v. McDermott Will & Emery LLP*, 738 F. Supp. 2d 758, 764 (S.D. Ohio 2010)  This, however, is the atypical case where, it is respectfully suggested, dismissal is appropriate because of

_____

[3] In addition to seeking a dismissal of Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) for failing to state a claim, GDRTA contends this case should be dismissed under Fed. R. Civ. P. 12(b)(1) for a lack of subject matter jurisdiction because Plaintiff failed to exhaust his administrative remedies.  *See* doc. 9 at PageID 56-58.  Exhaustion of administrative remedies is generally not a jurisdictional requirement, however.  *Cf. Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 400-03 (6th Cir. 2008) (finding the exhaustion of EEOC procedures is not a jurisdictional prerequisite to bringing a Title VII employment discrimination claim in federal court).  Further, the Sixth Circuit, when presented with the same issue, did not find it lacked subject matter jurisdiction.  *See King v. Mrs. Grissom's Salads, Inc.*, No. 98-5258, 1999 U.S. App. LEXIS 17944, 1999 WL 552512 (6th Cir. July 22, 1999). Accordingly, the Court reviews this argument under the Fed. R. Civ. P. 12(b)(6) failure-to-state-a-claim standard. While courts generally cannot consider matters outside the pleadings in ruling on a Fed. R. Civ. P. 12(b)(6) motion without converting it into a motion for summary judgment, *see* Fed. R. Civ. P. 12(d), there is an exception for documents referenced to, or cited in, a complaint and central to the claims therein.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Accordingly, the Court may properly consider the following documents which were attached as exhibits to GDRTA's motion, referenced in the complaint, and are central to the claims therein:  Dr. Valle's May 2010 FMLA certification (doc. 9-1), *see* doc. 2 ¶ 16; Dr. Wanat's June 2010 examination report (doc. 9-2), *see id.* ¶¶ 18-19; the June 10, 2010 letter from GDRTA to Plaintiff (doc. 9-3), *see id.* ¶ 20; and Dr. McClure's June 2010 report (doc. 9-4), *see id.* ¶ 22.

Plaintiff's failure to exhaust the available administrative appeals process prior to filing this suit; and also because of Plaintiff's inability to perform the essential functions of his bus driver job, as evidenced by his failure of the DOT medical exam.

## I.

Plaintiff's complaint provides that he has been employed as a bus driver for GDRTA since September 15, 2003. Complaint (doc. 2) ¶ 9. Plaintiff suffers from MS, which he typically keeps under control with medication, but nonetheless sometimes suffers from flare-ups. *Id.* ¶¶ 10-12. During his employment, Plaintiff has applied for, and been granted, leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, for a number of absences due to his sporadic flare-ups.[4] *Id.*

In May 2010, Plaintiff filed an application for FMLA leave related to his MS. *Id.* ¶ 15. Plaintiff also provided GDRTA with a medical certification from neurologist Dr. Michael Valle in support of his FMLA request. *Id.* ¶ 16; doc. 9-1. Dr. Valle reported that Plaintiff's MS flare-up symptoms (including fatigue, muscle pain, and spasms) prevent him from working approximately two days each week. Doc. 9-1 at PageID 62.

Thereafter, GDRTA advised Plaintiff it "had safety and liability concerns about [his] ability to perform [his] job duties," and requested Plaintiff undergo a "Fitness for Duty" examination. Doc. 2 ¶ 17. Dr. Robert Wanat, who conducted this exam on May 27, 2010, concluded that Plaintiff did not meet the DOT medical certification guidelines for operation of a commercial vehicle due to his MS symptoms.[5] Doc. 2 ¶¶ 18-19; doc. 9-2. Dr. Wanat attached

---

[4] No FMLA discrimination or retaliation claims are pled in Plaintiff's complaint. *See* doc. 2 at PageID 25-26. *Cf. Stevens v. Coach U.S.A.*, 386 F. Supp. 2d 55, 65 (D. Conn. 2005).

[5] As both sides make clear in their memoranda, the buses operated by GDRTA transport more than 16 passengers and thus qualify as commercial motor vehicles ("CMVs"). *See* 49 C.F.R. § 383.5. To drive a CMV, a person must have a commercial driver license ("CDL"). *See* 49 C.F.R. §§ 383.1, 383.23(a), 391.11(b)(5). CDL regulations instruct that a driver is "disqualified" if it is determined that he or she

selections from *The DOT Medical Examination: A Guide to Commercial Drivers' Medical Certification*, by Natalie Hartenbaum, M.D. to his report. *See* doc. 9-2 at PageID 66-71.

On June 10, 2010, GDRTA sent a letter to Plaintiff informing him that, because he failed the DOT examination, he could no longer drive for GDRTA and had to take an unpaid leave of absence. Doc. 2 ¶¶ 20, 23; doc. 9-3. Plaintiff was on unpaid sick leave for forty-seven weeks. Doc. 2 ¶ 23.

Plaintiff subsequently submitted an "independent medical evaluation for FMLA," dated June 7, 2010, from Dr. Dennis McClure. Doc. 2 ¶ 22; doc. 9-4. Although Dr. McClure estimated that Plaintiff would miss work due to flare-ups two days per month, he determined that Plaintiff could nonetheless "perform his job functions due to his condition." *Id.*

Further, Plaintiff alleges, he submitted to GDRTA "a number of physicians' certificates determining that he was able to return to work" during his unpaid leave, but was not allowed to return to work. Doc. 2 ¶¶ 24. Notably, however, Plaintiff does not allege that any of these reports specifically opined whether or not he met the DOT Medical Certification guidelines for operating a commercial motor vehicle. *See id.* Further, Plaintiff does not allege that he attempted to resolve the conflicting opinions through the established administrative procedure. *See id.*

Plaintiff returned to work as a GDRTA bus driver in April 2012.[6] *Id.* ¶ 24.

## II.

While Rule 8(a) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "[t]o survive a motion to

___

does not meet the DOT medical certification requirements. 49 C.F.R. § 383.5. Further, the CDL regulations state that "[a]n employer must not knowingly allow, require, permit, or authorize" a disqualified driver to operate a CMV. 49 C.F.R. §§ 383.37(b), 383.51(2).

[6] Plaintiff does not state why he was allowed to return to work in April 2012. However, GDRTA claims Plaintiff returned to work once he passed a DOT medical examination. *See* doc. 9 at PageID 46. Plaintiff does not dispute this fact in his opposition memorandum. *See* doc. 12.

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  The Court must "construe the complaint in the light most favorable to [Plaintiff] and accept all well-pleaded factual allegations as true." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks omitted).  Although "detailed factual allegations" are not required, "a formulaic recitation of the elements of a cause of action" is insufficient to state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Plausibility is not the same as probability, but rather "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).

## III.

Plaintiff's complaint should be dismissed because -- assuming, *arguendo*, that all of the allegations in his complaint are true -- he failed to exhaust the applicable DOT administrative procedures before filing this lawsuit, and was also legally unqualified during the time in question to drive a bus for GDRTA.[7]  Plaintiff claims in his complaint that the medical opinions of Dr. McClure and other physicians (following Dr. Wanat's disability finding) rendered him qualified to drive a bus and, therefore, GDRTA's refusal to allow him to return to work as a bus driver was unlawful.  *See* doc. 2 ¶¶ 22-26; *see also McKay v. Toyota Motor Mfg.*, 110 F.3d 369, 371 (6th Cir. 1997) (establishing that a plaintiff must show he or she was "qualified to perform the

---

[7] Even if the Court were to consider Plaintiff's affidavit -- which is attached to his opposition memorandum, not referenced in his complaint, and is thus a matter "outside the pleadings" -- such consideration, whether under Rule 12 or even as a summary judgment question under Rule 56, *see* Fed. R. Civ. P. 12(d), would not change the outcome here. *See* doc. 12-1.  Plaintiff does not aver in that affidavit that he utilized the available administrative procedures. *See id.*

essential functions of [his or her] job with or without reasonable accommodation" to prevail on an ADA employment discrimination claim). Plaintiff's argument is unavailing because GDRTA was legally justified in prohibiting him from driving a bus upon receiving Dr. Wanat's report -- stating that Plaintiff failed to meet the mandatory DOT medical certification guidelines. *See* 49 C.F.R. §§ 391.11(a) & (b)(4) (stating that a CMV operator must be physically qualified), 391.41(a)(1)(i) (stating that an operator of a CMV must be "medically certified as physically qualified to do so"); 29 C.F.R. § 1630.15(e) (establishing that an employer may defend against an ADA discrimination claim by demonstrating that the "challenged action [was] required or necessitated by another Federal law or regulation"); *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 570 (1999) (finding employer that terminated its commercial driver had an "unconditional obligation" and "consequent right" to follow DOT regulations requiring a commercial vehicle driver to meet certain physical qualifications); *King*, 1999 U.S. App. LEXIS 17944, at *6, 1999 WL 552512, at *2 ("Compliance with DOT safety regulations is an essential function of the job for a commercial driver"). Plaintiff thus fails to state an actionable disability discrimination claim in his complaint, and his pleading is subject to dismissal.

Further, in order to determine whether Plaintiff was qualified for his position, the Court would have to resolve the disagreement between the medical opinions of Dr. Wanat and Plaintiff's physicians, and this is not the appropriate forum in which to do so. Rather, DOT regulations provide procedures to resolve "a disagreement between the physician for the driver and the physician for the motor carrier concerning the driver's qualifications" to operate a commercial bus: the driver can submit an application and supporting evidence to the Director of the Office of Bus and Truck Standards and Operations to obtain a formal opinion, 49 C.F.R. § 391.47; and within sixty days of the Director's determination, the driver can appeal the decision

to the Assistant Administrator. *Id.* § 386.13.[8] In Ohio, the same process is available before the Director of the Public Utilities Commission's Transportation Department. Ohio Admin. Code § 4901:2-5-02(A). Appeals to Ohio's Transportation Department or the DOT are designed to afford plaintiffs "prompt and effective relief," *Campbell v. Fed. Express Corp.*, 918 F. Supp. 912, 918-19 (D. Md. 1996), as agencies are "much better equipped to handle resolution of disputes over a driver's medical qualifications, and can do so far more expertly and efficiently than a reviewing court." *Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 638 (8th Cir. 2003). "Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993). Accordingly, because Plaintiff fails to allege that he exhausted these administrative procedures, his ADA and Ohio disability discrimination claims should be dismissed. *Accord King*, 1999 U.S. App. LEXIS 17944, at *5-7, 1999 WL 552512, at *2-3 (dismissing ADA claim for failure to exhaust the DOT appeal process); *Harris*, 339 F.3d at 638 (same); *Campbell*, 918 F. Supp. at 918-19 (same); *see also West v. United Parcel Serv.*, No. 3:10-cv-716, 2011 U.S. Dist. LEXIS 43944, at *5 & n.3, 2011 WL 1539792, at *2 & n.3 (W.D. Ky. Apr. 22, 2011) ("Federal Circuit and District Courts unanimously have held that disputes concerning the issue of

---

[8] Plaintiff makes an unpersuasive argument that DOT regulations do not apply to GDRTA bus drivers because GDRTA is a political subdivision of the State of Ohio. *See* doc. 12 at PageID 82-87 (citing 49 C.F.R. § 390.3(f)(2), which provides that certain DOT regulations do not apply to "any political subdivision of a State"). This argument is unfounded because the controlling CDL regulations explicitly state that they apply to political subdivisions. *See* 49 C.F.R. §§ 383.3(a)-(b) ("[t]he employers and drivers identified in § 390(f) must comply with [these CDL] requirements"), 383.5 (defining "employer" as including "a political subdivision of a State"); *see also Shannon v. New York City Transit Auth.*, 332 F.3d 95, 102-03 (2d Cir. 2003) (applying DOT regulations to a city bus driver); *Daugherty v. City of El Paso*, 56 F.3d 695, 697-98 (5th Cir. 1995) (same). Moreover, Ohio has explicitly adopted the federal DOT regulations governing CDLs, and Ohio's CDL statute defines a covered "employer" as including political subdivisions. *See* Ohio Rev. Code § 4506.01(O); Ohio Admin. Code § 4901:2-5-02. Similar to federal regulations, under Ohio law, a driver is "disqualified" from operating a CMV if he or she does not meet DOT medical examination requirements. *See* Ohio Rev. Code §§ 4506.01(G)(3).

[medical] certification [for CMV drivers] should be resolved through the appeals process described in the federal regulations"); *EEOC v. P.A.M. Transp., Inc.*, No. 09-cv-13851, 2011 U.S. Dist. LEXIS 100331, at *15-18 & n.2, 2011 WL 3919300 (E.D. Mich. May 10, 2011) (and cases cited therein).

## IV.

### IT IS THEREFORE RECOMMENDED THAT:

1.      Defendant's motion to dismiss (doc. 9) be **GRANTED**; and

2.      This case be **CLOSED**.

July 2, 2013                                                    s/ **Michael J. Newman**
                                                               United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).