IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HARRY C. BROCKMEIER, JR., :

    Plaintiff,

v. : Case No. 3:12-cv-327

GREATER DAYTON REGIONAL : JUDGE WALTER H. RICE
TRANSIT AUTHORITY,

    Defendant. :

---

DECISION AND ENTRY REJECTING UNITED STATES MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #19);
SUSTAINING PLAINTIFF'S OBJECTIONS THERETO (DOC. #20);
OVERRULING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM OR, IN THE ALTERNATIVE, FOR LACK OF SUBJECT
MATTER JURISDICTION (DOC. #9), WHICH THE COURT
CONVERTED INTO A MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Harry C. Brockmeier, Jr., filed suit against his employer, Greater Dayton Regional Transit Authority ("GDRTA"), alleging claims of disability discrimination under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, and Ohio's Fair Employment Practices Act, Ohio Revised Code § 4112.02. This matter is currently before the Court on: (1) GDRTA's Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Lack of Subject Matter Jurisdiction, Doc. #9; (2) the United States Magistrate Judge's Report and Recommendations, Doc. #19, which recommended that said motion be sustained; and (3) Plaintiff's Objections to the Report and Recommendations, Doc. #20.

I.   **Background and Procedural History**

Harry Brockmeier has worked as a bus driver for GDRTA for approximately ten years. He suffers from a mild form of multiple sclerosis ("MS"). Most days, it is well controlled by medication. On the days it flares up, he takes intermittent leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq.* Compl. ¶¶ 9-12.

In May of 2010, Brockmeier submitted an application for FMLA leave. At GDRTA's request, he provided medical certification from his neurologist, who indicated that Brockmeier may experience flare-ups of his MS and may be unable to report to work 1-2 days per week. Compl. ¶¶ 14-16; Ex. A to Mot. to Dismiss. On May 24, 2010, GDRTA notified Brockmeier that, because of "safety and liability concerns about [his] ability to perform [his] job duties," he was required to undergo a "fitness for duty" examination. Dr. Robert Wanat, who conducted the examination on May 27, 2010, found that because Brockmeier "remains symptomatic as it relates to his MS," he did not meet "Department of Transportation Medical Certification guidelines for operation of a commercial vehicle." Compl. ¶¶ 17-19.

On June 10, 2010, GDRTA informed Brockmeier that because he had not passed his Department of Transportation ("DOT") examination, he could no longer drive a bus. Thereafter, Brockmeier submitted statements from several physicians, saying that he could safely operate a commercial vehicle, and could perform his job duties without restrictions. Nevertheless, GDRTA refused to allow him to return to

2

work. He was on unpaid leave for forty-seven weeks. In April of 2012, after passing a DOT medical examination, Brockmeier was finally allowed to return to work. Compl. ¶¶20-24.

On August 31, 2012, Brockmeier filed suit against GDRTA in the Montgomery County Common Pleas Court, alleging disability discrimination under federal and state law. GDRTA removed the case to federal court based on federal question jurisdiction, and then filed a motion to dismiss. Doc. #9. GDRTA sought dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that because DOT regulations prohibited Brockmeier from operating a commercial motor vehicle after failing his medical examination, he was not qualified to perform his essential job requirements, and had, therefore, failed to state a claim upon which relief can be granted. In the alternative, GDRTA sought dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing that because Brockmeier failed to exhaust his administrative remedies through the DOT, the Court lacked subject matter jurisdiction over his claims.

On July 2, 2013, United States Magistrate Judge Michael J. Newman issued a Report and Recommendations, Doc. #19, recommending that the Court sustain GDRTA's Motion to Dismiss because: (1) Brockmeier failed to exhaust the administrative appeals process prior to filing suit; and (2) Brockmeier's lack of medical certification rendered him unable to prove that he was "otherwise qualified" for his position as a bus driver.

3

On July 19, 2013, Brockmeier filed timely Objections to the Report and Recommendations, Doc. #20.  On that same date, the Court, noting that both parties had submitted extrinsic documents in support of their arguments, issued an Order converting GDRTA's pending motion to dismiss into a motion for summary judgment, and giving the parties additional time to submit additional evidence.  Doc. #21.  GDRTA subsequently filed an additional 30-page brief, which largely does nothing more than reassert the same arguments previously made.  Doc. #24.

## II.     Standard of Review

When a party makes proper objections to any part of a magistrate judge's report and recommendations on a dispositive motion, the district judge must review those portions *de novo*.  *See* Fed. R. Civ. P. 72(b)(3).  The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

In this case, because both parties submitted numerous exhibits not referred to in the Complaint, and because the Court found that those exhibits may bear on the outcome of the pending motion, the Court converted the motion to dismiss into a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 12(d).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

4

matter of law." Fed. R. Civ. P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255.

### III. Analysis

#### A. Federal Motor Carrier Safety Regulations, and the Collective Bargaining Agreement

The Federal Motor Carrier Safety Administration ("FMCSA"), part of the United States Department of Transportation, has promulgated regulations that lie at the heart of much of the current dispute. They are set forth in Subchapter B of Chapter III of Title 49 of the Code of Federal Regulations, 49 C.F.R. §§ 350-399. Three Parts of Subchapter B are potentially implicated here: (1) Part 383, "Commercial Driver's License Standards; Requirements and Penalties"; (2) Part 390, "Federal Motor Carrier Safety Regulations; General"; and (3) Part 391,

"Qualifications of Drivers and Longer Combination Vehicle (LCV) Driver Instructors."[1]

The parties disagree about the applicability of these regulations to GDRTA. It is undisputed that GDRTA is a "political subdivision" of the State of Ohio. *See* Ohio Revised Code § 306.31 (providing that regional transit authorities are political subdivisions of the State). The FMCSA regulations specifically state that, "[u]nless otherwise specifically provided, the rules in this subchapter [49 C.F.R. §§ 350-399] do not apply to . . . [t]ransportation performed by . . . any political subdivision of a State." 49 C.F.R. § 390.3(f)(2).

The "political subdivision" exception set forth in 49 C.F.R. § 390.3(f)(2) is, in fact, expressly excluded from Part 383, governing Commercial Driver's Licenses:

> (a) The rules in this part apply to every person who operates a commercial motor vehicle (CMV) in interstate, foreign, or intrastate commerce, to all employers of such persons, and to all States.
> (b) *The exceptions contained in § 390.3(f) of this subchapter do not apply to this part.* The employers and drivers identified in § 390.3(f) must comply with the requirements of this part, unless otherwise provided in this section.

49 C.F.R. § 383.3 (emphasis added). *See also* 49 C.F.R. § 390.3(b) (providing that the rules set forth in part 383 "are applicable to every person who operates a commercial motor vehicle . . . in interstate or intrastate commerce and to all employers of such persons"), and 49 C.F.R. § 383.5 (defining an "employer" as "any person (including . . . a political subdivision of a State) who owns or leases a

---

[1] Ohio has specifically adopted these federal regulations. *See* Ohio Admin. Code § 4901:2-5-02(A).

6

commercial motor vehicle"). GDRTA is, therefore, subject to the requirements of Part 383.

Nevertheless, Part 391, which establishes "minimum qualifications for persons who drive commercial motor vehicles," 49 C.F.R. § 391.1(a), contains no similar exclusion for political subdivisions. Pursuant to 49 C.F.R. § 390.3(f)(2), political subdivisions like GDRTA are, therefore, exempt from those minimum qualification requirements, including the physical qualification and medical certification requirements set forth in Subpart E, 49 C.F.R. §§391.41-391.49.

Although medical certification of GDRTA's bus drivers is not required as a matter of *federal or state law*, it is required as a matter of *contract*. Appendix B to the collective bargaining agreement between the GDRTA and the Amalgamated Transit Union AFL-CIO, Local 1385, provides as follows:

> In an effort to ensure a safe and healthy workforce, the Authority and the Union agree to the implementation of DOT regulated Bi-annual physicals for all employees whose job [sic] require that they possess a Commercial Drivers License and/or employees who operate revenue service vehicles.

Ex. A1 to Doc. #12.

Within the framework of these regulations and contract provisions, the Court turns to the arguments raised in GDRTA's pending motion.

### B. Failure to Exhaust Administrative Remedies

GDRTA argues that Brockmeier's disability discrimination claims must be dismissed because he failed to exhaust his administrative remedies under DOT

7

regulations.[2] According to GDRTA, if Brockmeier wanted to dispute Dr. Wanat's determination that he did not meet the DOT medical certification guidelines for operation of a commercial vehicle, he was required to follow the procedures set forth in 49 C.F.R. § 391.47, governing "Resolution of Conflicts of Medical Evaluation." GDRTA argues that Brockmeier needed to file an application with the DOT's Office of Bus and Truck Standards and Operations, see 49 C.F.R. § 391.47(d)(1), or with the Director of the Ohio Public Utilities Commission's Transportation Department, see Ohio Admin. Code § 4901:2-5-02(A).[3]

The Magistrate Judge found that because Brockmeier had failed to exhaust these administrative procedures, his claims must be dismissed. Brockmeier argues that the Magistrate Judge erred in doing so. The Court agrees. As discussed above, Part 391 simply does not apply to political subdivisions like GDRTA.

Glenn Salyers, President of Union Local 1385, averred that when he asked the United States Department of Transportation to resolve the medical dispute and make an administrative determination concerning Brockmeier's fitness for duty, the DOT "declined to exercise jurisdiction over the case, citing the fact that GDRTA is

---

[2] The Court agrees with Magistrate Judge Newman that because exhaustion of administrative remedies is not a jurisdictional requirement, this argument is more appropriately analyzed under Federal Rule of Civil Procedure 12(b)(6) rather than 12(b)(1).

[3] This is arguably inconsistent with the June 10, 2010, letter that Brockmeier received from GDRTA, stating that he was disqualified because he had not passed the DOT examination, and would "need to provide the necessary information to Kettering Workers' Care when you meet the standards for the certification." Ex. C to Doc. #9.

8

a government entity and DOT administrative procedures did not apply." Salyers Aff. ¶6; Ex. to Doc. #20. GDRTA argues that this statement is inadmissible hearsay and may not be considered.

Even if that particular statement is inadmissible hearsay, Salyers further stated that, in his experience, the DOT "does not provide administrative remedies for GDRTA drivers. . . They will not resolve medical disputes regarding fitness for GDRTA drivers." *Id.* at ¶7.[4] Notably, this statement is consistent with the Court's interpretation of the regulations.

Moreover, the fact that the parties agreed by contract that bus drivers would be subject to DOT medical certification requirements does not mean that they were also subject to the administrative appeal process set forth in 49 C.F.R. § 391.47, or Ohio Administrative Code § 4901:2-5-02(A). In fact, the Court notes that Section 4 of Article VIII of the collective bargaining agreement, governing "Leaves of Absence and Sickness and Disability Leaves," provides:

> Disputes between the Authority's chosen physician concerning the physical or mental condition of the employee, which bears upon the employee's leave of absence or extension thereto, shall be submitted for resolution to a neutral, third physician agreeable to the parties whose expenses shall be borne equally by the parties.

Ex. A1 to Doc. #12.

For these reasons, the Court SUSTAINS Brockmeier's First Objection to the Report and Recommendations. Because Brockmeier is employed by a political

---

[4] The Court notes that, in issuing the Report and Recommendations, the Magistrate Judge did not have the benefit of Salyers's affidavit.

9

subdivision, the cases relied upon by GDRTA and by the Magistrate Judge are inapposite. Brockmeier was not required to exhaust his administrative remedies prior to filing suit, and his failure to do so does not warrant dismissal of his claims.

Brockmeier next argues that the Magistrate Judge erred in treating the exhaustion of administrative remedies as a *pleading deficiency* subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). The Magistrate Judge held that because Brockmeier "fails to allege that he exhausted these administrative procedures, his ADA and Ohio disability discrimination claims should be dismissed." Doc. #19, at 7. The Court agrees that failure to exhaust administrative remedies is an affirmative defense. As such, a plaintiff is not required to plead exhaustion of administrative remedies in his complaint. *See Clark v. Donahoe*, No. 2:11-cv-597, 2012 WL 3224097, at *7 n.1 (S.D. Ohio Aug. 6, 2012). The Court therefore also SUSTAINS Brockmeier's Second Objection to the Report and Recommendations.

### C. Disability Discrimination Claims

Disability discrimination claims, whether brought under federal or state law, are analyzed in the same manner. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008). In order to establish a prima facie case of disability discrimination under a "failure to accommodate" theory, Brockmeier must prove that (1) he is disabled; (2) he is qualified for the position; and (3) he requested and was denied a reasonable accommodation for his disability. *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996). A "qualified individual" is "an individual who,

with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

GDRTA argues that Brockmeier cannot establish the second element, *i.e.,* that he was "qualified" to operate a commercial vehicle. According to GDRTA, once Dr. Wanat determined that Brockmeier failed to meet the DOT medical certification requirements, Brockmeier was prohibited by federal and state law from driving a commercial motor vehicle, and therefore could not perform the essential functions of his job. GDRTA notes that charges of discrimination may be defended by showing that the "challenged action is required or necessitated by another Federal law or regulation." 49 C.F.R. § 1630.15(e).

GDRTA relies on the physical and medical qualification requirements set forth in 49 C.F.R. §§ 391.11 and 391.41. Magistrate Judge Newman relied on these same regulations in concluding that Brockmeier was not qualified to drive a bus. Doc. #19, at 6. But, as discussed above, GDRTA is not subject to the requirements of Part 391. In this respect, Brockmeier's case is distinguishable from *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 570 (1999) (holding that truck driver who failed to meet DOT's binding visual acuity qualifications was not a "qualified individual with a disability"), and *King v. Mrs. Grissom's Salads, Inc.*, No. 98-5258, 1999 WL 552512, at *2 (6th Cir. July 22, 1999) (holding that truck driver who failed to obtain medical certification through DOT was not a "qualified individual with a disability").

11

GDRTA also cites to regulations that prohibit drivers who are "disqualified" from driving commercial motor vehicles, 49 C.F.R. § 383.51(a)(1), and prohibiting employers from knowingly permitting drivers who are "disqualified" from doing the same, 49 C.F.R. § 383.51(a)(2). As noted above, Part 383 *does* apply to political subdivisions, including GDRTA.

GDRTA points out that, under Part 383, "disqualification" occurs upon the occurrence of "a determination by the FMCSA that a person is not qualified to operate a commercial motor vehicle under part 391 of this subchapter." 49 C.F.R. § 383.5. Likewise, Ohio law prohibits a person from driving a commercial motor vehicle while the person is "subject to disqualification," Ohio Revised Code §4506.04(A)(2), and "disqualification" is defined to include "[a] determination by the federal motor carrier safety administration that a person is not qualified to operate a commercial motor vehicle under 49 C.F.R. 391," Ohio Revised Code § 4506.01 (G)(3). In this case, however, since Part 391 does not apply to political subdivisions like GDRTA, the lack of medical certification by the FMCSA does not render Brockmeier "disqualified" as that term is defined in the federal regulations or state law. Accordingly, Brockmeier was not prohibited *by federal or state law* from driving a commercial motor vehicle.

This does not necessarily mean, however, that he was qualified for the position he held. As previously noted, the collective bargaining agreement provides that GDRTA bus drivers are subject to "DOT regulated Bi-annual

12

physicals." Ex. A1 to Doc. #12.[5] Although not explicitly stated, it can easily be inferred that if a bus driver did not pass the physical examination, he or she would be deemed "unqualified" to perform the job. As GDRTA points out, Brockmeier's counsel himself states that "[t]here is no question that a driver in Harry Brockmeier's position had to meet DOT physical qualifications to be a qualified individual." Doc. #20, at 10.

Brockmeier notes that he passed his previous DOT physical examination in September of 2009, and was not scheduled for another one until September of 2010. Ex. A2 to Doc. #12.[6] Dr. Wanat's May 27, 2010, examination was a "fitness for duty" examination conducted in connection with Brockmeier's application for FMLA leave. It was in that context that Dr. Wanat determined that Brockmeier, who remained symptomatic as it related to his MS, did not meet the DOT medical qualification standards for operation of a commercial motor vehicle. Brockmeier maintains, however, that nothing about his physical condition had changed since September of 2009 when he successfully passed his DOT medical exam.

---

[5] The word "biannual" is defined as "occurring twice a year." http://www.merriam-webster.com/dictionary/biannual. Nevertheless, the medical certification cards carried by the bus drivers normally expired after two years. Ex. A2 to Doc. #12. Therefore, the word "biannual," as used in the collective bargaining agreement, appears to mean "once every two years" rather than twice a year.

[6] It appears that, because Brockmeier has MS, he was subject to a medical evaluation every year instead of every two years. Ex. A1 to Doc. #12.

13

Of course, the fact that Brockmeier successfully passed his DOT physical examination in September of 2009 does not insulate him from a finding, eight months later, that he is not physically qualified to perform his job. Certainly, *whenever* GDRTA has reason to suspect that an employee is no longer physically capable of performing his or her job, GDRTA has a duty to evaluate that employee's fitness for duty, and to place that employee on leave if public safety is implicated. In this case, the May 2010, FMLA medical certification from Brockmeier's neurologist, stating that Brockmeier may need to be absent one or two days each week, prompted a safety concern. GDRTA was, therefore, entitled to order a "fitness for duty" examination.

Nevertheless, Dr. Wanat's determination, that Brockmeier did not meet the DOT medical qualification standards for operation of a commercial motor vehicle, is not necessarily determinative. After GDRTA told Brockmeier that because he had not passed his physical examination, he was being placed on unpaid leave, Brockmeier submitted several physicians' statements to GDRTA, indicating that he was, in fact, physically capable of performing his job.

Brockmeier submitted a June 7, 2010, written evaluation from Dennis McClure, M.D., a neurologist, who opined that Brockmeier "is not unable to perform any of his job functions due to his condition," but may need to be absent from work during flare-ups of the MS. Ex. D to Doc. #9. On July 2, 2010, Brockmeier submitted another statement from Dr. McClure, indicating that he was

14

"able to perform occupational duties without restrictions and/or to safely operate a commercial motor vehicle." Brockmeier Decl. ¶20.

GDRTA argues that Dr. McClure's statements are irrelevant because he was evaluating Brockmeier for purposes of FMLA leave, and made no determination that Brockmeier met the DOT medical certification standards. Brockmeier, however, states that "I got my medical certification again on June 22, 2010, and was approved and received a new medical card establishing my fitness under DOT standards." Although he submitted this certification to GDRTA and asked to be returned to work, GDRTA refused. *Id.* at ¶18. In the Court's view, Brockmeier has submitted sufficient evidence to create a genuine issue of material fact about whether he was "qualified" for his position. The Court therefore SUSTAINS Brockmeier's Third Objection to the Report and Recommendations.

Finally, Brockmeier objects to the Magistrate Judge's statement that "Plaintiff does not seek an accommodation or challenge the reasonableness of the accommodation his employer offered him; rather, Plaintiff claims he should have been permitted to continue driving a bus, despite the fact that he failed a medical exam." Doc. #19, at 2. Although this statement -- concerning the alleged failure to seek an accommodation -- does not appear to have played a significant part in Magistrate Judge Newman's recommendation to dismiss the Complaint, the Court agrees that the statement is factually incorrect. The Complaint, in fact, specifically alleges that "[n]o reasonable accommodation was offered to Brockmeier to allow him to return to work, despite repeated requests." Compl. ¶25. Brockmeier

15

requested that GDRTA accommodate his disability by allowing him to return to work, but take intermittent leave when his MS flared-up. The Court therefore SUSTAINS Brockmeier's Fourth Objection to the Report and Recommendations.

IV.    **Conclusion**

For the reasons set forth above, the Court REJECTS the United States Magistrate Judge's Report and Recommendations in their entirety, Doc. #19, and SUSTAINS Plaintiff's Objections thereto, Doc. #20. The Court OVERRULES Defendant GDRTA's Motion to Dismiss for Failure to State a Claim for Which Relief Can Be Granted, Doc. #9, which the Court has converted into a motion for summary judgment. Genuine issues of material fact preclude summary judgment on Brockmeier's claims of disability discrimination at this time.[7]

Date: August 29, 2013

*(signature)*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[7] The fact that the Court converted GDRTA's motion to dismiss into a motion for summary judgment, and then overruled that motion, does not preclude the parties from filing additional motions for summary judgment once discovery is completed. Pursuant to the Preliminary Pretrial Conference Order, Doc. #16, the discovery deadline is April 8, 2014. That same Order indicates that the parties have until May 8, 2013, to file motions for summary judgment. This is obviously a typographical error; the deadline for filing motions for summary judgment is actually May 8, 2014.

16