IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HARRY C. BROCKMEIER, JR.,          :

        Plaintiff,

    v.                                    :          Case No. 3:12-cv-327

GREATER DAYTON REGIONAL              :          JUDGE WALTER H. RICE
TRANSIT AUTHORITY,

        Defendant.                      :

---

DECISION AND ENTRY SUSTAINING DEFENDANT GREATER
DAYTON REGIONAL TRANSIT AUTHORITY'S MOTION FOR
SUMMARY JUDGMENT (DOC. #43); JUDGMENT TO ENTER IN
FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION
ENTRY

---

Plaintiff, Harry C. Brockmeier, Jr. ("Brockmeier"), filed suit against his

employer, Defendant, Greater Dayton Regional Transit Authority ("GDRTA"),

alleging violations of Title I of the Americans with Disabilities Act, 42 U.S.C.

§ 12111, and Ohio's Fair Employment Practices Act, Ohio Revised Code Chapter

4112.

This matter is currently before the Court on Defendant's Motion for

Summary Judgment, Doc. #43. For the reasons set forth below, that motion is

sustained.

I.      **Background and Procedural History**

GDRTA operates a mass transit system in the metropolitan Dayton area.

Brockmeier has worked as a commercial bus driver for GDRTA since September of

2003.  Since 1998, he has suffered from a mild form of multiple sclerosis ("MS"),

a neurological condition.  Although generally well-controlled with medication, his

condition occasionally flares up.  In the past, each time that happened, he took

intermittent leave under the Family and Medical Leave Act ("FMLA") so that he

would not pose a safety risk while driving the bus.  Notably, he has a nearly

perfect driving record with GDRTA, with no traffic accidents or injuries.

Brockmeier Aff., Doc. #45-1, PageID#770.

When Brockmeier submitted a request for FMLA leave on May 6, 2010,

GDRTA asked for medical certification from his healthcare provider.  *Id.* at

PageID#770-71.  His neurologist, Dr. Michael Valle, indicated that Brockmeier had

relapsing remitting MS, and symptoms included fatigue, muscle spasms, tingling in

the extremities, abnormal gait, and possible vision and memory issues.  Dr. Valle

certified that, when the condition flared up, it would be medically necessary for

Brockmeier to take off as many as two days off per week.  Doc. #43-1,

PageID#501-04.  Based on Dr. Valle's statements, GDRTA had safety and liability

concerns about Brockmeier's ability to perform his job duties.  It therefore required

him to undergo a "Fitness for Duty" examination, to be conducted by Dr. Robert

Wanat.  *Id.* at PageID#515.

2

Dr. Wanat examined Brockmeier on May 27, 2010, and issued a report on May 28, 2010. *Id.* at PageID#515-17. He noted that, although it appeared that Brockmeier's MS was well-controlled, the large number of FMLA absences showed that he was still symptomatic. Brockmeier said that he took leave when he experienced tingling in his feet, fatigue, or short term memory problems. Dr. Wanat noted that Brockmeier had requested numerous hours of FMLA leave each month from January of 2009 through May of 2010.[1] Dr. Wanat concluded, to a reasonable degree of medical certainty, that Brockmeier did not meet the Department of Transportation ("DOT") Medical Certification guidelines for operation of a commercial vehicle. *Id.* at PageID##516-17. Dr. Wanat also conferred with Dr. Valle, who concurred with Dr. Wanat's opinion. *Id.* at PageID#524.

In addition to the "Fitness for Duty" exam conducted by Dr. Wanat, GDRTA required Brockmeier to obtain a second opinion in connection with the FMLA leave request. On June 7, 2010, Dr. Dennis McClure, a neurosurgeon, performed an independent medical exam for that purpose. Dr. McClure confirmed that Brockmeier has MS and, although the condition did not render him unable to perform any of his job functions, it would periodically flare-up, making it medically necessary for Brockmeier to miss work approximately two days each month. He noted that, during a flare-up, Brockmeier has "fatigue, nausea, problems with

---

[1] In 2010, Brockmeier took 40 hours of FMLA leave in January, 64 hours in February, 35 hours in March, and 11 hours in April. He also took 13 hours of FMLA leave in the first half of May. Doc. #43-1, PageID#517.

balance and emotional lability, and possibly vision, memory and paresthesias of his extremities (numbness and tingling).  The patient is aware of his condition.  He states, 'I would never put anyone at risk due to my condition.'"  Dr. McClure concluded that, "if he notices that he is having a flare up, I think it is appropriate that he does call in to work to state that he is not able to drive a bus."  *Id.* at PageID##508-14.

On June 10, 2010, GDRTA informed Brockmeier that he did not meet the DOT standards and was unable to drive.  Accordingly, he was placed on unpaid leave.  Doc. #45-1, PageID#771.  Shortly thereafter, Brockmeier sought to regain his DOT certification so that he could return to work.

On June 22, 2010, he visited Deborah Shaffer, a certified nurse practitioner who specializes in DOT medical examinations.  He told her that, despite having MS, he was asymptomatic.  Doc. #43-1, PageID#525.  Her physical examination of Brockmeier corroborated his statement.  However, she told him that he needed to have his treating neurologist complete three separate forms before she could recertify him.  Two of those forms, which Brockmeier had *Dr. Valle* sign, stated that Brockmeier's MS was "under control" and that the prescription medications he was taking should not adversely affect his ability to safely operate a commercial motor vehicle.  *Id.* at PageID##528-29.  Brockmeier had *Dr. McClure* sign the third form, which certified that Brockmeier was symptom-free and "able to perform occupational duties without restrictions and/or to safely operate a commercial vehicle."  *Id.* at PageID#530.

4

Shaffer concluded that Brockmeier met the applicable DOT standards and was fit to drive a commercial vehicle. She therefore certified him for a one-year period, beginning June 22, 2010. *Id.* at PageID#527. Although Brockmeier submitted this DOT medical certification to GDRTA, GDRTA still refused to allow him to return to work. Doc. #45-1, PageID#771.

Thereafter, Brockmeier began treatment with Dr. Mark Friedman, another neurologist. A letter from Dr. Friedman to Dr. Wanat, dated December 7, 2010, notes that Brockmeier was concerned about being able to return to work. Dr. Friedman notes that Brockmeier reported no recurrent episodes of fatigue since his last visit in September of 2010. Dr. Friedman planned to do another MRI in March of 2011, and compare it to an MRI done in March of 2010. He stated, "[i]f the MRI shows stability compared to the study from March 2010 and he reports no further episodes of fatigue by then, he could potentially return to work as a bus driver." Doc. #43-1, PageID#531.

On March 30, 2011, following the next MRI, Dr. Friedman issued a certificate indicating that Brockmeier could return to work with no restrictions. *Id.* at PageID#532. On April 4, 2011, Dr. Wanat found Brockmeier to be clinically stable, and issued the requisite Medical Examiner's Certificate. *Id.* at PageID#533-35. GDRTA allowed Brockmeier to return to work in April of 2011.

In August of 2012, Brockmeier filed suit against GDRTA, alleging violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq.*, and Ohio's Fair Employment Practices Act, Ohio Revised Code Chapter 4112.

5

Doc. #2. GDRTA filed a motion to dismiss for failure to state a claim upon which relief can be granted, Doc. #9. Magistrate Judge Newman recommended that the Court grant the motion. Doc. #19. The Court converted the motion into a motion for summary judgment and gave the parties time to submit additional materials. Doc. #21. Ultimately, the Court rejected Magistrate Judge Newman's recommendation, and overruled the motion, finding that genuine issues of material fact precluded summary judgment on the question of whether Brockmeier was "otherwise qualified" for his position. The Court, however, gave the parties leave to file additional motions for summary judgment once discovery was completed. Doc. #25.

On May 6, 2016, GDRTA filed a motion for summary judgment, Doc. #43. When Brockmeier failed to file a memorandum in opposition to that motion within the time allotted by the local rules, the Court issued an Order giving him seven days to show cause why that motion should not be granted as unopposed and his claims dismissed with prejudice. Doc. #44. Brockmeier failed to respond to the show cause order. However, on June 10, 2016, he filed his response to the motion for summary judgment. Doc. #45. GDRTA filed a timely reply brief. Doc. #46.

## II.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

6

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III. Discussion

### A. Failure to Respond to Show Cause Order

As previously discussed, when Brockmeier failed to file a timely response to GDRTA's motion for summary judgment, the Court gave him seven days to show cause why the motion should not be granted as unopposed and the case dismissed

8

with prejudice. Rather than respond to the Show Cause Order, Brockmeier instead
filed his response brief, albeit 10 days late. GDRTA argues that because he failed
to comply with the Court's Order, summary judgment is warranted.

Brockmeier's failure to respond to the Show Cause Order was clearly
improper. Dismissal with prejudice for failure to prosecute would be warranted
under Federal Rule of Civil Procedure 41(b). At the very least, Brockmeier should
have sought leave of Court to file a belated response to the motion for summary
judgment. Nevertheless, given the fact that Brockmeier has now filed a response,
and that GDRTA has fully replied to the arguments raised therein, the Court will
address the merits of Brockmeier's claims.

**B. Analysis**

Brockmeier's Complaint alleges that GDRTA discriminated against him on the
basis of his disability--multiple sclerosis--in violation of the ADA and Ohio Revised
Code Chapter 4112, when it placed him on unpaid leave for 47 weeks, and
refused to allow him to return to work despite medical certification of his fitness to
do so.[2] Brockmeier argues that, as it had in the past, GDRTA should have
reasonably accommodated his disability by allowing him to continue to work,

_____

[2] According to Brockmeier, GDRTA denied his request for paid FMLA leave based
on Dr. McClure's statement that he was "not unable to perform his job functions
due to his condition." Doc. #45-1, PageID#771. He argues that it is inconsistent
for GDRTA to have denied his request for paid leave under the FMLA on this basis,
and yet also argue that he is unfit for duty, *i.e.*, not "otherwise qualified" under the
ADA. These two statutes, however, effectuate entirely different employment
policies; a person protected under one statute is not necessarily protected under
the other.

9

taking intermittent FMLA leave when his condition flared up. He maintains that nothing about his physical condition changed to warrant placing him on unpaid leave in May of 2010.

GDRTA maintains that, because Brockmeier was exhibiting frequent fatigue, muscle spasms, tingling in his hands and feet, vision and memory issues, and problems with balance and emotions, he did not meet the DOT medical certification standards for commercial bus drivers, and was not qualified to drive, even on those days when he was apparently symptom-free. It further contends that it reasonably accommodated his disability by granting him a leave of absence, and keeping his position open until his condition stabilized.

Because the ADA and Ohio's disability discrimination statute are parallel "in all relevant respects," Brockmeier's federal and state claims may be analyzed together. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008). The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112 (a).

Where, as here, a plaintiff has direct evidence that he suffered an adverse employment action, *i.e.*, being placed on unpaid leave, because of his disability, he must prove that he (1) is disabled; and (2) is otherwise qualified for the position despite his disability, with or without accommodation or with an alleged essential

10

job requirement eliminated. *Ferrari v. Ford Motor Co.*, --F.3d--, 2016 WL 3443646, at \*\*3-4 (6th Cir. June 23, 2016) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)). If the plaintiff establishes these elements, the burden shifts to the employer to prove that the "challenged job criterion is essential" or that the "proposed accommodation will impose an undue hardship on the employer." *Id.* (quoting *Monette*, 90 F.3d at 1186).

It is undisputed that Brockmeier is "disabled," as that term is defined in the ADA. *See* 42 U.S.C. § 12102(1). At issue is whether he was "otherwise qualified" for his position as a commercial bus driver from May of 2010 through April of 2011, despite his disability. GDRTA argues that he was not "otherwise qualified" during this time period, because he did not meet the DOT medical guidelines.[3]

DOT medical certification was not required by federal or state regulation because, as a political subdivision, the GDRTA was expressly excluded from compliance. *See* Doc. #25, PageID##289-90. It was, however, required by the collective bargaining agreement.[4] Doc. #45-2, PageID#782. Brockmeier admitted

───────────────────────

[3]  Brockmeier notes that he passed his DOT certification in September of 2009 and was not required to be recertified until September of 2010. Doc. #45-3, PageID##783-88. Nevertheless, as the Court explained in its August 29, 2013, Decision and Entry, this certification does not insulate him from a finding, during the course of that one-year period, that he is no longer physically qualified to drive a commercial vehicle. Doc. #25, PageID#297.

[4]  Brockmeier compares this case to *Gunnels v. Akal Security, Inc.*, CA No. V-02-132, 2004 U.S. Dist. LEXIS 31104, at \*26-27 (S.D. Tex. Feb. 19, 2004), in which the relationship between the United States Marshal's Service ("USMS") and

that, unless he met DOT medical standards, he was not qualified to drive a commercial vehicle. Doc. #43-1, PageID##483-84. Accordingly, unless he met DOT medical standards, he cannot prevail on his ADA claim. *See Williams v. J.B. Hunt Transp., Inc.*, --F.3d--, 2016 WL 3405790, at *5 (5th Cir. June 20, 2016) (holding that, because employee did not meet DOT medical standards, he could not be considered a qualified individual with a disability under the ADA).

Based on the evidence presented by the parties, the Court agrees that no reasonable jury could find that Brockmeier was "otherwise qualified" to perform the essential functions of his job during the relevant time period.

Under the DOT medical examination guidelines, an individual with multiple sclerosis is not automatically disqualified from driving a commercial vehicle. Doc. #43-3, PageID#641. However, such an individual will be disqualified unless he or she can show: (1) no signs of "relapse or progression" of the disease; (2) "no or only functionally insignificant neurologic signs and symptoms"; (3) no new lesions over the course of at least one year, as shown by successive MRIs; and (4) "[n]o history of excessive fatigability or periodic fluctuations in motor performance." *Id.* at PageID#645.

---

the defendant security company that employed the plaintiff was "governed by contract, not by federal statute or regulation." *Gunnels*, however, is factually and legally distinguishable The issue there was whether certain medical qualifications required by the USMS had the effect of federal law such that the security company could successfully assert the affirmative defense, under 29 C.F.R. § 1630.15(e), that the alleged discriminatory action was "required or necessitated" by federal law. The court held that the USMS's medical qualification standards did not rise to the level of federal law, and denied the defendant's motion for summary judgment on this basis. *Id.*

Deborah Shaffer, MS, CRNP, who recertified Brockmeier after conducting the DOT medical exam in June of 2010, testified that because flare-ups of MS are unpredictable, they could pose a significant threat to public safety.  *Id.* at PageID#623.  If an individual with MS has recently experienced symptoms such as visual disturbances, spasticity in the limbs, fatigue, balance issues, numbness in the extremities or anything else that may cause that person to become incapacitated while driving, that person would be disqualified under DOT standards, even if he or she experiences those symptoms only once a month.  *Id.* at PageID##608-09, 622-25, 629.

Statements made by Dr. Valle  in connection with his May 2010, FMLA certification, concerning the nature of Brockmeier's symptoms and the frequency of expected flare-ups, prompted safety concerns, and triggered GDRTA's request for a "fitness for duty" examination.  Dr. Wanat found that Brockmeier did not meet the DOT guidelines, because Brockmeier was experiencing frequent episodes of excessive fatigue, tingling in his feet, and problems with short-term memory as a result of the MS.  Doc. #43-2, PageID##568-75.  He concluded, to a reasonable degree of medical certainty, that Brockmeier was not fit to drive a commercial bus.  *Id.* at PageID#571.  Dr. Valle, Brockmeier's treating neurologist, concurred with Dr. Wanat's opinion.  *Id.* at PageID#582.

Brockmeier points out that other health care professionals, including Ms. Shaffer and Dr. McClure, reached the opposite conclusion.  He argues that their

13

opinions create a genuine issue of material fact, precluding summary judgment. The Court disagrees.

Dr. McClure performed an independent medical examination on June 7, 2010, in connection with Brockmeier's request for FMLA leave. At that time, Brockmeier was reporting intermittent problems with fatigue and balance. Dr. McClure found that these symptoms would require him to miss work a few days each month, even though the MS did not render him "unable to perform any of his/her job functions." Doc. #43-1, PageID#509.

Brockmeier has admitted that McClure's exam was not a fitness-for-duty exam; nor was it a DOT medical exam. It was conducted solely for FMLA certification purposes.[5] *Id.* at PageID#430. Accordingly, Dr. McClure's statement, that Brockmeier's MS did not render him unable to perform his job, is insufficient to create a genuine issue of material fact concerning whether Brockmeier was "otherwise qualified" to drive a commercial motor vehicle under DOT medical standards.

Brockmeier also points to the fact that, on June 22, 2010, after GDRTA placed him on unpaid leave, he visited Deborah Shaffer at Concentra Medical Centers. She conducted a DOT medical examination, found him qualified to drive a commercial motor vehicle, and recertified him for another year. Doc. #43-3, PageID##634-36.

---

[5] Under the FMLA, an eligible employee is entitled to leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

14

Shaffer, however, explained in her deposition why she now disavows that certification. Because Brockmeier disclosed to her that he had been diagnosed with MS, Doc. #43-1, PageID#525, she asked him if he was experiencing any symptoms of that disease. He told her that he was not. Accordingly, in the section marked "Medical Examiner's Comments on Health History," Shaffer wrote, "Ø MS symptoms per pt." *Id.*; Doc. #43-3, PageID## 608, 611.

Shaffer testified that, if he had told her that he experienced flare-ups several times each month, with symptoms that included fatigue, nausea, problems with balance, emotional lability, vision problems, memory problems, and tingling and numbness in his extremities, she would not have recertified him, because he would not have met DOT medical standards, and it would be unsafe for him to drive a bus. Doc. #43-3, PageID##614-15, 630-31.

Schaffer further testified that, although her own physical examination uncovered no symptoms of MS on that particular day, this did not necessarily mean that Brockmeier had not experienced recent flare-ups that would disqualify him from certification. *Id.* at PageID##621-22. This is why she required supporting documentation from his treating neurologist. She needed to be sure that the prescription drugs that Brockmeier was taking would not adversely affect his ability to safely drive a bus. *Id.* at PageID##615-18. She also needed the treating neurologist to certify that Brockmeier was, in fact, asymptomatic, and could "safely operate a commercial motor vehicle." *Id.* at PageID#619, 639.

15

Brockmeier had Dr. Valle, his treating neurologist, sign the two forms certifying that the prescription drugs should not adversely affect his driving ability. *Id.* at PageID##637-38. Brockmeier, however, took the third form--seeking certification that he was asymptomatic and able to safely drive a bus--to Dr. McClure, who had examined him only once, and solely in connection with his FMLA application.[6] At his deposition, Brockmeier was asked why he took this certificate to Dr. McClure instead of his treating neurologist. He responded as follows:

> A.   Because he seemed to wonder why I was even there to see him.
>
> Q.   Could you explain that?
>
> A.   He just looked at me and said that he never seen anybody in my – that have MS the way I was and in my condition. He said, "I would have never known unless you told me."
>
> Q.   So you thought that he would be a good person to complete this form?
>
> A.   That, or I was told – I can't recall why I went to him, but he had just saw me, probably because he might have been the last one to see me, so I just took it to him and figured if he wanted to do it, he did; if he didn't, he didn't; no big deal. It doesn't hurt to ask.

Doc. #43-1, PageID##464-65.

───────────────────

[6]   Notably, Dr. Valle had already concurred with Dr. Wanat's opinion that, as a result of the MS, Brockmeier did not meet the DOT medical standards. Doc. #43-1, PageID#524. Therefore, it was doubtful that he would have been willing to sign the third form, stating that Brockmeier was asymptomatic and could safely drive a bus.

Dr. McClure signed the certification form, which read as follows:

I certify that this individual is able to perform occupational duties without restrictions and/or to safely operate a commercial motor vehicle. Patient is symptom free of paresthesias; balance issues; weakness; spasticity; diplopia/vision problems—patient is asymptomatic. I understand that Concentra Medical Centers will rely on my opinion in making their determinations of whether or not the individual is qualified to work.

*Id.* at PageID#530 (emphasis added). The underlined text was hand-written; the rest was typed.

Shaffer explained at her deposition that, because she had instructed Brockmeier to have his treating neurologist sign the forms, she assumed that Dr. McClure was, in fact, his treating neurologist. She testified that, had she known that Dr. McClure had examined Brockmeier just once, for the purpose of obtaining a second opinion for an FMLA leave request, she would not have relied on his certification that Brockmeier was asymptomatic and could safely operate a commercial vehicle. Doc. #43-3, PageID##618-22.

Dr. McClure was also deposed about his June 7, 2010, physical examination of Brockmeier, and about the statement he later signed concerning Brockmeier's ability to safely drive a bus. The June 7th exam was solely for the purpose of providing a second opinion as to whether Brockmeier had a qualifying condition under the FMLA. Doc. #43-4, PageID#664-66, 680. At that visit, Brockmeier told him that he was often fatigued and had problems with his balance. He also experienced nausea, emotional lability, numbness and tingling in his legs, and problems with his memory. *Id.* at PageID#668-69. Dr. McClure testified that he

17

was "quite surprised to see how good he looked neurologically for the length of time that he said he's had MS.  Must have caught him on a good day." *Id.* at PageID#681.

Dr. McClure testified that he had no specific recollection of signing the DOT certification form, although he admitted that it appeared to contain his signature. *Id.* at PageID##687-89.  He testified that he did not complete the handwritten portion of the statement that indicated that Brockmeier was asymptomatic, and admitted that, based on what Brockmeier had told him on June 7, 2010, that statement was incorrect.  *Id.* at PageID##669, 682, 687-88.

Moreover, Dr. McClure testified that no one told him that his certification would be relied upon for purposes of DOT certification.  *Id.* at PageID#688-89.  He had very little experience with DOT examinations, and was not familiar with DOT medical standards.  *Id.* at PageID#655-57.  He did not realize that he should have consulted DOT medical guidelines prior to signing the form.  *Id.* at PageID#689. He did not evaluate whether Brockmeier met DOT standards or could safely drive a bus.  *Id.* at PageID##657, 666, 679, 683.  When presented with the DOT criteria for medical certification of individuals with MS at his deposition, Dr. McClure testified, to a reasonable degree of medical certainty, that Brockmeier did not meet

those standards for certification, and could not safely drive a commercial motor vehicle.[7]  *Id.* at PageID##683-96.

Given the sworn deposition testimony of Ms. Shaffer and Dr. McClure, each disavowing the medical certifications on which Brockmeier relies, the Court concludes that Brockmeier has failed to present sufficient evidence to create a genuine issue of material fact concerning whether he was "otherwise qualified" to operate a commercial motor vehicle during the time period in question.

The Court rejects Brockmeier's argument that Shaffer's and McClure's deposition testimony, disavowing their previous medical certifications, only highlights the existence of a genuine issue of material fact.  Notably, neither Shaffer nor McClure has disavowed previous *sworn* testimony.  They have merely explained why, had they been aware of all of the relevant facts, they would not have signed the documents that they did.  There is no genuine dispute concerning the nature or the frequency of the symptoms that Brockmeier was experiencing at the time he was placed on unpaid leave.  Shaffer testified that, had Brockmeier been forthcoming with this information, she never would have certified him.  Dr. McClure admitted that the form that he signed contained statements that were clearly inconsistent with what Brockmeier had told him just weeks earlier.  He also testified that he did not understand that Shaffer would rely on it for DOT certification.

_____

[7]  Brockmeier maintains that McClure was deposed concerning an outdated version of the DOT guidelines from 1988.  However, he has not submitted a more current version or explained how the old guidelines differ from the newer ones.

At the end of the day, Brockmeier has not one health care professional willing to testify that he met the applicable DOT medical standards during the relevant time period. Accordingly, no reasonable jury could find that he was "otherwise qualified" to drive a bus.

Moreover, the Sixth Circuit has held that:

[a] disabled person is not qualified for an employment position . . . "if he or she poses a 'direct threat' to the health or safety of others which cannot be eliminated by a reasonable accommodation." *Mauro v. Borgess Med. Ctr.*, 137 F.3d 398, 402 (6th Cir.1998); *see also Holiday v. City of Chattanooga*, 206 F.3d 637, 647 n. 4 (6th Cir.2000) (same); 42 U.S.C. § 12113(b). A "direct threat" is "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." *Id.* § 12111(3).

*Michael v. City of Troy Police Dep't*, 808 F.3d 304, 307 (6th Cir. 2015). GDRTA argues that it determined that Brockmeier posed a direct threat to the safety of others, and that the threat could not be eliminated by allowing him to take intermittent FMLA leave on an as-needed basis. It further argues that, in making that determination, it relied on the objectively reasonable medical opinions of Dr. Wanat and Dr. Valle. Brockmeier has offered no argument to the contrary.

Based on the evidence presented, no reasonable jury could find that Brockmeier was "otherwise qualified" to drive a bus during the time he was on unpaid leave. Accordingly, there is no need for the Court to consider whether GDRTA failed to reasonably accommodate his disability. Nevertheless, the Court notes that, because Brockmeier was not "otherwise qualified" for his position, his requested accommodation, of allowing him to continue to work with intermittent medical leave taken as needed, was objectively unreasonable. Under the

20

circumstances presented here, the accommodation given by GDRTA, a job-protected leave of absence, was a reasonable one. *See, e.g., Walsh v. United Parcel Serv.*, 201 F.3d 718, 726 (6th Cir. 2000); *Longino v. City of Cincinnati*, No. 1:12-cv-424, 2013 WL 2424253, at *6 (S.D. Ohio June 4, 2013); *Green v. Bakemark USA, LLC*, No. 1:13-cv-841, 2016 WL 258345, at *10 (S.D. Ohio Jan. 20, 2016).

For the reasons set forth above, the Court SUSTAINS Defendant GDRTA's Motion for Summary Judgment. Doc. #43.

## IV.   Conclusion

Based on the evidence presented, no reasonable jury could find that Plaintiff was "otherwise qualified" to drive a commercial motor vehicle during the time period in question. Accordingly, the Court SUSTAINS Defendant GDRTA's Motion for Summary Judgment, Doc. #43. Judgment shall be entered in favor of Defendant and against Plaintiff.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

21

Date: July 12, 2016

WALTER H. RICE
UNITED STATES DISTRICT JUDGE